Curran, Dennis J., J.
Mr. and Mrs. John and Claire Haggerty seek to annul the decision of the Grafton Planning Board which granted a special permit to neighbor Christy Pease to construct and operate a four-acre renewable solar collection farm on residential property directly across the street from their home. They have brought a motion for summary judgment because, they claim, the Grafton Planning Board granted the special permit under an inapplicable provision of the town’s zoning by-law.[2]
For the reasons that follow, the Haggertys’ motion must be DENIED.
BACKGROUND
The following undisputed facts are taken from the summary judgment record and where disputed the facts are viewed in the light most favorable to the nonmoving party. See, Sullivan v. Liberty Ins. Co., 444 Mass. 34, 38 (2005).
Claire Haggerty owns and lives, along with her husband, John, at 90 Old Upton Road, Grafton, Massachusetts. Christy Pease owns 79 Old Upton Road, which lies directly across the street. Ms. Pease runs a business on the properly where she leases her barn stalls for boarding and for horseback riders to congregate before going on trail rides in the area. The properties owned by both Ms. Pease and the Haggertys are located in an R-40 zoning district that provides sites for “low density residential development.” They are not located in the “Campus Development Overlay” district, a zoning area so designated by Grafton’s By-Law.
Ms. Pease entered into a lease with Borrego Solar to construct and operate a renewable solar collection farm on a portion of her property. On September 22, 2014, Borrego applied to the Grafton Planning Board for a special permit to construct the solar collection farm on Ms. Pease’s property under the “Electric Generation” use regulation of the By-Law. The facility consists of 2,058 solar panels designed to sit on racking above the ground.
The Grafton Planning Board held hearings on the special permit application and site plan modification. On May 5, 2015, the Planning Board voted 5-0 to grant the special permit and 3-1 to approve the site plan. The special permit allowed Borrego to construct the solar energy facility under section 3.2.3.1 of the By-Law. The Haggertys appealed this decision of the Planning Board.
Section 3.2.3.1 of the By-Law is a Use Regulation Schedule that sets out what type of buildings or structures shall be permitted in specific zoning dis *664 tricts, as well as what type of authorization is required before constructing such a building or structure. Under section 1.5.1 of the By-Law, the Planning Board “shall have the authority to grant special permits for all uses designated with the symbol ‘S’ on the Use Regulation Schedule in section 3.2.3.1.”
In section 3.2.3.1, under the “Electric generating or distribution station or substation” classification, the R-40 zoning district is designated with the “S” symbol indicating that such an “electric generating or distribution station or substation” may be built in the R-40 district under special permit. The By-Law does not define what an “electric generating or distribution” station is. However, it is undisputed that the solar collection farm in question is an electric generating facility. Consolidated Statement of Facts, ¶14.
Under section 3.2.2.1, “[w]here an activity might be classified under more than one of the uses in the Use Regulation Schedule, the more specific classification shall determine permissibility; if equally specific the more restrictive shall govern.”
Section 9 of the By-Law governs the uses and structures that fall within the Campus Development Overlay district of Grafton, an area of .775 square miles that makes up 3.48% of the town.[3] Section 9.2.A provides that “all uses and structures within that district permitted by the provisions of this section 9, and any other uses and structures shall be governed solely by the provisions of this by-law relating to the underlying district in which such uses and structures are located.’’ (Emphasis added.)
Under section 9.4B of the By-Law, the use of “research and development in the fields of Alternative energy and Renewable Energy” is permitted inside the Campus Development Overlay district. The By-Law specifically defines “Renewable energy” in section 2.1, in part, as: “[e]nergy derived from natural resources which are regenerated over time through natural processes. Such energy resources include the sun (solar) . . . Renewable energy resources maybe used directly or indirectly to create other more convenient forms of energy.”
DISCUSSION
I. Standard of Review
Summary judgment shall be granted when all material facts have been established and the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Miller v. Mooney, 431 Mass. 57, 60 (2000). The moving party bears the burden of demonstrating the absence of a triable issue from the pleadings, depositions, answers to interrogatories, and any affidavits. Flesner v. Technical Commc’ns Corp., 410 Mass. 805, 808-09 (1991). The Court reviews all of the evidence and draws any inference in the light most favorable to the nonmoving party. Drakopoulos v. U.S. Bank Nat’l Ass’n, 465 Mass. 775, 777 (2013).
The moving party satisfies its burden at the summary judgment stage if it can demonstrate “that the party opposing the motion has no reasonable expectation of proving an essential element of that party’s case.” Kourouvacilis v. General Motors Corp., 410 Mass, 706, 716 (1991). “Once the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts establishing the existence of a material fact in order to defeat the motion.” SCA Servs., Inc. v. Transportation Ins. Co., 419 Mass. 528, 531 (1995). “(B]are assertions and conclusions . . . are not enough to withstand a well-pleaded motion for summary judgment. ” Polaroid Corp. v. Rollins Envt’l Svcs. (NJ), Inc., 416 Mass. 684, 696 (1993).
Judicial review of the Planning Board’s approval of a special permit is a de novo analysis. Grady v. Zoning Bd. of Appeals of Peabody, 465 Mass. 725, 729 (2013). Under G.L.c. 40A, §17, this court hears de novo all issues raised on appeal, makes independent findings of fact and determines the legality of the Board’s decision. Pendergast v. Board of Appeals of Barnstable, 331 Mass. 555, 558-59 (1954). Although fact-finding in the Superior Court is de novo, we review with deference the legal conclusions made by and within the authority of the Board. Mellendick v. Zoning Bd. of Appeals of Edgartown, 69 Mass.App.Ct. 852, 857 (2007). A reasonable construction that a zoning board gives to its town’s by-laws is entitled to deference. Cameron v. DiVirgilio, 55 Mass.App.Ct. 24, 29 (2002). The decision of a zoning board “cannot be disturbed unless it is based on a legally untenable ground” or is based on an “unreasonable, whimsical, capricious, or arbitrary” exercise of its judgment in applying land use regulation to the facts. Roberts v. Southwestern Bell Mobile Sys., Inc., 429 Mass. 478, 487 (1999).
II. Analysis
The Haggertys argue that the Planning Board unreasonably ignored the fact that the solar panel facility Borrego placed on Ms. Pease’s property was categorized under the “renewable energy” use categoiy in section 9 rather than the more general “electric generating” use categoiy in the Use Regulation Schedule of section 3.2.3.1. Alternatively, the Haggertys argue that the “electric generating” use provision of the Use Regulation Schedule does not encompass renewable solar energy applications because of the inclusion of a “wind energy conservation [sic] system” in section 3.2.3.1(8).
Borrego and the other defendants contend that the Planning Board decision was reasonable and the Haggertys’ interpretation of the interplay between Section 3.2.3.1, the Use Regulation Schedule, and section 9, governing the Campus Development Overlay district, has no foundation in fact or law.
a. Categorization of Solar Panel Facility
It is undisputed that Ms. Pease’s property at 79 Upton Road is located in the R-40 zoning district of Grafton and is not within the Campus Development Overlay district; and the Planning Board made such a finding. Based upon the Use Regulation Schedule set *665 forth in section 3.2.3.1, the Board therefore granted the special permit to allow Borrego to build solar panels on Ms. Pease’s property.[4]
The Haggertys’ argument that the proposed solar facility is a renewable solar energy application more properly classified under the more restrictive “Renewable Energy” use provision of section 9 is unavailing. Section 9.2.A unambiguously provides that section 9 governs uses and structures of the Campus Development Overlay district and that “any other uses and structures shall be governed solely by the provisions of this by-law relating to the underlying district in which uses and structures are located.” (Emphasis added.) Since 79 Upton Road lies within the R-40 zoning district, uses and structures on this property are governed solely by the By-Law relating to R-40 districts. Plainly, section 9 of the By-Law does not apply to the solar farm in this case which is located in the R-40 district and not within the Campus Development Overlay district.
The Zoning Board’s decision to grant a special permit for the solar farm under the “electric generating” use category is neither unreasonable nor “whimsical, arbitrary, or capricious.” See Roberts, 429 Mass, at 487. The decision is grounded in the Zoning Board’s determination that a proposed solar farm constitutes an electric generating station. The Haggertys have provided no citation to any portion of the By-Law indicating that section 9, which governs the Campus Development Overlay district, should apply to this properly.
The Haggertys also seek support for their position in section 3.2.2.1, arguing that the proposed solar panels should be classified under the “Renewable Energy” use provision of section 9, and not the more generic “electric generating” use regulation in section 3.2.3.1. Section 3.2.2.1 provides that “(w]here an activity might be classified under more than one of the uses in the Use Regulations Schedule, the more specific classification shall determine permissibility.” (Emphasis added.) The “Renewable Energy” use provision in section 9 is not in the Use Regulations Schedule found in section 3.2.3.1. Therefore, the Haggertys’ argument that the proposed solar panels should be classified under the more restrictive “renewable energy” use provision of section 9 is not supported by the By-Law.
b. Electric Generating Station and Wind Energy Conversion Classification
Alternatively, Mr. and Mrs. Haggerty argue that the inclusion of a “wind energy conservation [sic] system” in the Use Regulation Schedule indicates that the “electric generating” stations classification excludes renewable energy sources, is similarly unfounded. Whole it is possible that Grafton’s inclusion of a wind energy conversion system on the Use Regulation Schedule indicated that the town chose to allow wind systems but not solar panel systems in residential districts, this is not the only reasonable interpretation of the By-Law.[5]
“[Although interpretation of the by-law is in the last analysis a judicial function, deference is owed to a local zoning board’s home grown-knowledge about the history and purpose of its town’s zoning by-law.” Duteau v. Zoning Bd. of Appeals of Webster, 47 Mass.App.Ct. 664, 669 (1999). Furthermore, in determining an appeal under G.L.c. 40A, §17, “a court owes deference to the interpretation of a zoning by-law by local officials” when that interpretation is reasonable. Pellulo v. Croft, 86 Mass.App.Ct. 908, 909-10 (2014). Even considering the inclusion of the wind energy conversion system immediately after the “electric generating” section, the Planning Board’s interpretation that a solar panel system falls under the definition of an “electric generating” category is reasonable.
The Haggertys do not dispute that the solar collection farm is designed to collect and convert solar energy while including power transformers, underground electrical conduits, and power inverter enclosures. Similarly, they concede that the solar array may be classified as an electric generating system. The Planning Board’s determination that the proposed solar system is an “electric generating” system is reasonable and ought to be accorded deference. See, Shirlely Wayside Ltd. Partnership v. Board of Appeals of Shirley, 461 Mass. 469, 475 (2012) (a court only owes deference to local officials’ determination of a by-law if that interpretation is reasonable).
ORDER
For these reasons, Mr. and Mrs. Haggerty’s motion must be DENIED.
Judgment shall enter forthwith for all defendants in both cases bearing dockets numbered 15-CV-0800 and 16-CV-0056.

 he Haggertys also move for summary judgment on a consolidated case, Civil Action No. 16-CV-0056, in which they appeal the decision of the Grafton Zoning Board of Appeals affirming the initial decision of the building inspector to issue a building permit to construct a solar collection facility. If the special permit is annulled, there is no basis for the issuance of the permit upon which the inspector’s decision relied.

 he Campus Development Overlay district was created in 1992 to “promote the development of commercial activities in the fields of biotechnology, other sciences, and related activities within a small area of the Town related to the existing Tufts University campus.”

 As previously mentioned, it is undisputed that the Use Regulation Schedule allows for “[e]lectric generating or distribution station or substation” use in the R-40 zoning district through a special permit application process.

 Although not directly argued by the Haggertys, the Court notes that section 3.2.2.7 of the By-Lawprovides “[a]ny use which cannot reasonably be classified under any use listed in the Use Regulations schedule is specifically not allowed in all districts.” The Haggertys do concede that the solar panels in question are an “electric generating” facility. Therefore, section 3.2.2.7 does not *666 merit a grant of summary judgment in the Haggerty's’ favor on the grounds that a renewable solar energy application is permitted only in the Campus Development Overlay district.